```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ROBERT TUFANO,
                        Plaintiff,             MEMORANDUM
                                                AND ORDER
        - against -
                                                CV 03-0977 (JO)
RIEGEL TRANSPORTATION, INC.,
                        Defendant.
-----------------------------------------------------------X
```

**JAMES ORENSTEIN, Magistrate Judge:**

Plaintiff Robert Tufano ("Tufano") prevailed against his former employer, defendant Riegel Transportation, Inc. ("RTI"), on his claim for damages arising from RTI's failure to provide him with notification of his right to continue medical coverage upon his separation from employment. *See* Docket Entry ("DE") 37 (Findings of Fact and Conclusions of Law) ("FFCL"). Having secured that victory, Tufano now seeks reimbursement of his litigation costs, including reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1). *See* DE 38 (Memorandum of Law in Support of Attorneys' Fees) ("Memo."). For the reasons set forth below, I now award Tufano a total of $19,098.00, including $18,948.00 in reasonable attorneys' fees and $150.00 in reimbursable costs; I also deny his request for pre-judgment interest but award him post-judgment interest on his damage award of $10,232.90 at an annual rate of 5.10 percent to be calculated from the date on which the Clerk enters judgment.

I.      Background

I assume the reader's familiarity with my Findings of Fact and Conclusions of Law, which set forth the general factual and procedural background of this case. I summarize below only the portion of that background that is relevant to the instant application.

At the time of Tufano's termination on June 28, 2002, he had been employed by RTI as a general freight truck driver for approximately eight years. During Tufano's employment, RTI paid him approximately $50,000 per year and provided him with health insurance coverage through various providers, including, at the time of Tufano's termination, a provider named GHI. Several months after his termination, on December 6, 2002, Tufano learned that he had a gall bladder condition that required surgery. Believing himself still to be covered by his former employer's insurance plan, Tufano asked GHI to authorize the surgery he needed. *See* FFCL at 1-2. In a letter dated December 11, 2002, GHI authorized the procedure with the proviso that he "must be eligible for coverage at the time the actual services are rendered." Plaintiff's Exhibit ("PX") 14.

GHI initially made payments on Tufano's medical bills but soon ceased; in a letter dated January 1, 2003, it informed Tufano that his coverage had ended on October 1, 2002. *See* PX 15. That same month, GHI offered coverage to Tufano pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1161 *et seq*. ("COBRA"). The coverage that GHI offered was retroactive to the date on which Tufano's earlier coverage had ended, and would therefore have covered the surgery that resulted in the damages at issue in this litigation. *See* PX 33-A.

Tufano declined the offer. At trial he offered two reasons for that decision. First, at the time of GHI's offer, he was litigating a separate claim against RTI's principal, Robert Riegel ("Riegel"), concerning his termination. Second, he was anticipating getting married in the near future and thereupon obtaining health insurance through his fiancee's employer. *See* Trial Transcript ("Tr.") 42-43, 55. RTI asserts that when Tufano rejected GHI's offer of retroactive

2

coverage, he was represented in the then-pending litigation against Riegel by the same attorney for whose fees in this litigation he now seeks reimbursement. *See* DE 40 ("Opp.") at 5.

That assertion is not supported by any explicit evidence in the record of this case. I note, however, that Tufano has never gainsaid the assertion, and it appears consistent with other facts in the record, including an ambiguous answer that Tufano gave at the bench trial before me, *see* Tr. at 48-49, as well as the fact that Tufano's lead attorney in this case has represented him since the inception of this litigation several weeks after Tufano declined COBRA coverage in January 2003 (although I note that the name of that attorney's law firm has changed at least twice in the interim). *See* DE 1. It is also consistent with several entries in the billing records Tufano has submitted in support of his application, which document legal work performed on his behalf in 2002 – after the termination of his employment with RTI but before the surgery that generated the instant litigation. *See* Opp. at 5-6 (citing Memo. Ex B (billing records)).[1] In light of the absence of a record on the point, I do not assume that Tufano made the decision to reject COBRA coverage upon the advice of counsel. Moreover, my determination of the instant application would not be affected by a clearer record as to whether or not Tufano's counsel advised him not to mitigate, or the reasons for such advice, if any.

Tufano commenced this lawsuit on February 27, 2003, DE 1 ("Complaint"), and the parties thereafter consented to have it referred to me for all purposes including the entry of

---

[1] The entries that are patently related to counsel's representation of Tufano in matters other than the instant litigation appear to account for more than ten percent of the attorneys' fees for which he now seeks reimbursement (as well as at least some of the costs; *see* Memo. Ex. C). His attempt to compel the reimbursement of fees that he unquestionably could not have incurred in this litigation, and his counsel's participation in that endeavor is, to say the least, quite troubling. I address the implications of that aspect of the application in the discussion below.

3

judgment pursuant to 28 U.S.C. § 636(c)(1). DE 23. With such consent, I conducted a non-jury trial of the matter on April 26 and May 12, 2005. DE 30; DE 31. Following the trial's conclusion and after reviewing additional briefing submitted by the parties, on February 11, 2006, I made my findings of fact and conclusions of law. Specifically, I found that Tufano had proved RTI's liability and, based on the parties' stipulation as to the amount of damages, I awarded Tufano $10,232.90. FFCL at 11. Tufano subsequently submitted the instant application. *See* DE 38-1 (Tufano's memorandum of law) ("Memo."); *id*. Ex. B (billing records), *id*. Ex. C (cost records); DE 38-2 Declaration of Saul D. Zabell ("Zabell Dec."). RTI responded with an opposing memorandum of law. *See* Opp.

II. Discussion

    A. Attorneys' Fees

        1. Tufano Is Entitled To An Award Of Fees

In an action under the Employee Retirement Income Security Act ("ERISA"), of which COBRA is part, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). My exercise of that discretion is guided by five factors:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987); *see also Seitzman v. Sun Life Assurance Company of Canada, Inc.*, 311 F.3d 477, 482 (2d Cir. 2002).

Two of the *Chambless* factors warrant little consideration under the circumstances of this case: the extent to which RTI is able to pay, and the extent to which Tufano's success benefits others. RTI does not assert that it cannot afford to reimburse Tufano, and there is no evidence in the record suggesting that the company is insolvent. The record is equally clear that Tufano brought this action on behalf of himself only, and not to vindicate the rights of any others. That fact does not favor Tufano's application, but it also does not preclude the relief he seeks. *See Locher v. Unum Life Insurance Company of America*, 389 F.3d 288, 299 (2d Cir. 2004) (noting that "failure to satisfy the fifth factor does not preclude an award of attorneys' fees"). Taken together, these two factors are of negligible weight. The remaining three warrant further discussion before I assess the relative weight of all factors.

      a.      <u>Culpability</u>

In *Salovaara v. Eckert*, 22 F.3d 19 (2d Cir. 2000), the court found that a defendant was "culpable" for purposes of *Chambless* because, by violating ERISA, it "thereby depriv[ed] plaintiffs of rights under a pension plan and violat[ed] a Congressional mandate." *Id*. at 28. The party seeking fees need not demonstrate that its culpable opponent acted in bad faith to establish the first *Chambless* factor; the finding of an ERISA violation alone suffices. *See Paese v. Hartford Life and Accident Insurance Company*, 449 F.3d 445, 450 (2d Cir. 2006). Tufano proved by a preponderance of the evidence that RTI failed to provide him with proper notice of his right to COBRA health insurance coverage, and thereby violated the Congressional mandate codified at 29 U.S.C. § 1166(a)(4)(B). He did not prove, however, that RTI committed the violation in bad faith. Nevertheless, RTI's conduct was at least minimally culpable, and therefore lends some support to an award of costs and fees.

5

### b. Deterrence

The evidence at trial "established that RTI did not maintain any written office procedures for mailing notification to employees regarding their rights under COBRA, nor any other written procedures regarding advising employees about their health insurance. Indeed, RTI could not even keep track of the employees who elected to use COBRA coverage." FFCL at 8. I conclude that granting an award of costs and fees will prompt RTI – and possibly other employers as well – to take greater care in creating and implementing administrative procedures to ensure that beneficiaries whose health care coverage lapses upon the termination of their employment are given proper notice of their right to continued medical coverage under COBRA. Given the relatively little effort it would have taken RTI to do that which it was required to do, I find this factor compelling.

### c. The Relative Merit Of The Parties' Respective Positions

Assessing the relative merits of the parties' respective positions is the most difficult factor to apply in this case, largely because neither side has acted entirely reasonably. RTI argues, with considerable justification, that Tufano should have mitigated his damages by electing to accept the retroactive COBRA coverage that GHI offered to him in January 2003. *See* Opp. 4-5. There is no question that he could have done so but chose otherwise primarily because he sought tactical advantage in litigating a separate claim against Riegel arising from his termination. *See* Tr. 55. In that sense, Tufano's decision in January 2003 was unreasonable.

However, the fact that Tufano made an unreasonable decision to sue rather than mitigate his damages does not mean that his legal position remained unreasonable as the case proceeded. To the contrary, as I pointed out in awarding judgment to Tufano,

6

> RTI's mitigation theory must fail, because – as a defense to liability – failure to mitigate is an affirmative defense that the defendant must plead pursuant to Rule 8(c) of the Federal Rules of Civil Procedure.... RTI did not plead failure to mitigate as an affirmative defense in its answer to Tufano's complaint, *see* DE 4, and has thereby waived its right to do so now.

FFCL at 10 (quotations and citations omitted).

Tufano's failure to mitigate, and his decision instead to litigate was in a very real sense unreasonable. However, once Tufano decided to choose the course of litigation, it was decidedly unreasonable of RTI to expect to rely on a failure-to-mitigate theory without pleading it as an affirmative defense. It was also unreasonable of RTI, in light of the evidence, to force Tufano to incur litigation costs far in excess of the amount in controversy to vindicate his right to recover the cost of his surgery. In that regard, I note that another magistrate judge to whom this case was previously assigned advised the parties very early in the course of these proceedings "to attempt to settle [the] action based upon reasonable medical bills and [the] amount genuinely owed for surgery on plaintiff." DE 7 (minute entry for initial conference on Feb. 19, 2004); *see also* DE 8 (minute entry for conference on Sept. 30, 2004, noting that magistrate judge advised "that [the] case be settled as it will be expensive to litigate and a material issue of fact now exists" as to whether RTI provided notice of COBRA coverage to Tufano). Thus, once Tufano made the unreasonable decision to sue rather than to mitigate, RTI could still have averted much of the cost of the ensuing litigation by making more reasonable decisions of its own as the case progressed.

This litigation was an extremely wasteful use of resources for all involved. Tufano, possibly with the assistance of counsel, made a poor choice in January 2003 that started the parties down this unfortunate path, but RTI repeatedly – and unquestionably with the assistance

7

of counsel – made later choices that compounded the problem. Under the circumstances, I find that this factor weighs in favor of granting Tufano's application for an award of costs and fees.[2]

### d. Conclusion As To The Availability Of Fees

In assessing all of the *Chambless* factors, I do not consider them mechanistically or in isolation, because "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights, even when small amounts are involved." *LaBarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 227 (2d Cir. 2004) (quoting *Chambless*, 815 F.2d at 872); *see also Paese*, 449 F.3d at 451 (approving district court's analysis that allowed "one factor to influence the others"); *Seitzman*, 311 F.3d at 483 (jointly considering the first and fourth *Chambless* factors). Instead, I assess the relative weight of all factors with each viewed in the context of all the others.

As explained above, all of the factors either weigh in Tufano's favor or are of negligible weight. To the extent that the fourth factor is difficult to resolve, I believe it favors some reimbursement for Tufano rather than none at all. Moreover, even if Tufano had better options than litigation available to him for at least part of the time after RTI improperly failed to notify him of his right to COBRA coverage, he would *never* have had occasion to incur any legal fees in this case if RTI had honored its legal obligations under ERISA from the start. Tufano may have failed to mitigate his damages, but the only reason he had damages to mitigate was that RTI

---

[2] As I noted at the outset, my determination of the instant application does not turn on whether Tufano relied on counsel's advice in deciding to reject GHI's offer of retroactive COBRA coverage. Regardless of the source of any advice he may have received, Tufano's decision to forego mitigation in order to seek tactical advantage in litigation against Riegel was unreasonable. It would not become more so by virtue of being counsel's idea, nor would evidence of such advice vitiate the unreasonableness of RTI's own later decisions.

8

failed to do that which the law required. Under such circumstances, I exercise my discretion to compel RTI to reimburse Tufano for a reasonable amount of attorneys' fees.

2. Application Of The Lodestar Method

Having decided to award Tufano reasonable attorneys' fees, I must use the "lodestar method" as the first step in determining the reasonable amount of fees to award. *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d. Cir. 1997). Applicable law gives me broad discretion to determine both the reasonable hourly rate and the reasonable number of compensable hours that together determine that lodestar amount. *See Hensley,* 461 U.S. at 433, 437; *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (to calculate lodestar, "[t]he number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals").

Tufano was represented by the law firm Zabell & Associates, P.C. and its similarly named predecessors. According to the declaration of Saul Zabell ("Zabell"), who served as Tufano's trial counsel, the firm has charged Tufano a total of $42,301.25 for 161.95 hours of work by its attorneys and paraprofessional staff billed at hourly rates ranging from a low of $75 for an intern to a high of $350 that Zabell himself seeks for his work on this fee application. *See* Memo. at 2-3, 11; Zabell Dec. ¶ 16. I analyze each component of the lodestar in turn.

a. The Attorneys' Hourly Rates

In assessing a reasonable hourly rate, I must use the "prevailing market rate" in the community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Luciano*, 109 F.3d at 115. The "prevailing community" is the district in which the action was litigated. *Id.* at 115-116. The

specific rate that is reasonable for a given attorney depends on such factors as the attorney's customary rate, the novelty and complexity of the issues presented, and the overall success achieved in the case. *Id*. at 116. Moreover, because attorneys practice in a dynamic market, past cases in a given jurisdiction are relevant in determining a reasonable hourly rate, to the extent they disclose the fees awarded to attorneys of comparable skill, but I cannot rely *exclusively* on such precedent if the party making the fee application also submits any credible evidence that the current prevailing rate is higher than suggested in those earlier cases. *See Farbotko v. Clinton County of New York,* 433 F.3d 204, 210 (2d Cir. 2005).

Tufano's application includes no such evidence; instead, his attorney tells me only about his own qualifications and those of his colleagues. *See* Zabell Dec. ¶¶ 8, 10-16. I therefore look for guidance to recent precedent in this district, and find that the hourly rates Tufano proposes are unreasonably high. In the exercise of my discretion, and guided by recent decisions in the relevant market, I will award fees at the following reasonable hourly rates: $250 for partners, $150 for associates, and $60 for the intern. *See LaBarbera v. J.E.T. Resources, Inc.*, 396 F. Supp.2d. 346, 353 (E.D.N.Y. 2005); *see also Morin v. Nu-Way Plastering Inc.*, 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005) (finding a range between $200 and $300 reasonable for partners, $200 and $250 reasonable for senior associates, and $100 and $150 for junior associates); *Aiello v. Town of Brookhaven*, 2005 WL 1397202, at *5 (E.D.N.Y. June 13, 2005) (same); *King v. JCS Enterprises, Inc.*, 325 F. Supp.2d 162, 169 (E.D.N.Y. 2004) (citing cases).

    b.  <u>The Attorneys' Hours</u>

Just as a lawyer in private practice may not bill a client for hours not reasonably spent on the client's case, a lawyer may not so bill his adversary. *Hensley*, 461 U.S. at 434. To ensure a

reasonable fee award, I must review the claimed hours and eliminate from the lodestar calculation those that I find to be "excessive, redundant, or otherwise unnecessary." *Id.* at 434. In doing so, I am guided by the admonition that "[e]fforts put into... the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns." *Murray v. Mills*, 354 F. Supp.2d 231, 238 (E.D.N.Y. 2005) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)). As I did in determining a reasonable hourly rate, I have wide discretion in determining a reasonable number of hours to use as the basis for awarding fees based on my general experience and my "familiarity with the case." *Id.*

In setting about the exercise of that discretion, I reject at the outset RTI's contention that I should defer adjudication of Tufano's fee application pending "discovery into the need for, and basis of, the fees sought." Opp. at 7. As RTI acknowledges, an application for fees should not result in a "second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (quoted in Opp. at 6); *see also In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 301-02 (1st Cir.1995) ("[a] district court is not obliged to convene an evidentiary hearing as a means of resolving every attorneys' fee dispute"). This is not a case where a request for fees is supported by insufficiently detailed time records, nor is it a case where the party opposing such an application has been denied an opportunity to voice its objections or submit evidence. *Cf. Crescent Publ'g Group v. Playboy Enter., Inc.*, 246 F.3d 142, 147-48 (2d Cir. 2001) (remanding fee award where district court did not allow opposing party an opportunity to develop a dispute of material fact that could not be resolved from the existing record, but acknowledging that an evidentiary hearing is "not required in every case").

My review of the pertinent case law persuades me that, to the extent Tufano's request is excessive, I can make a reasonable approximation of the number of hours for which his attorneys' work should be reimbursed without the need for further development of the factual record. For example, the Second Circuit has approved the use of "across-the-board percentage cuts" as a practical way of "trimming fat" from an excessive fee application. *See In re Agent Orange Product Liability Litigation*, 818 F.2d 226, 237-238 (2d Cir. 1987); *see also Levy v. Powell,* 2005 WL 1719972 (E.D.N.Y. 2005) (reducing the requested hours of individual attorneys by 35 percent and 10 percent, respectively, for such factors as vagueness, excessiveness, redundancy, and duplication among attorneys). Another permissible strategy is to reduce the hours for specific attorney or specific stages of the litigation. *See*, *e.g.*, *Murray,* 354 F. Supp.2d at 238-241 (dividing the plaintiff's billing statement into four stages and reducing the requested hours substantially within each category by replacing the total hours with the number of hours the court determined was reasonable for the task). In the following analysis, I employ a combination of such strategies, and I am able to do so because Tufano has submitted detailed records explaining the tasks that his attorneys performed on his behalf and the time spent on each. *See McCann v. Coughlin,* 698 F.2d 112, 130 (2d Cir. 1983) ( application for attorney's fees be accompanied by contemporaneous time records documenting "the number of hours worked and the matters involved"); *N.Y.S. Teamsters Conference Pension & Retirement Fund v. United Parcel Serv., Inc.*, 2004 WL 437474,*3 (N.D.N.Y. Feb. 27, 2004) (billing records need not provide a minute-by-minute accounting of each attorney's work, but should identify the "general subject matter" of time expenditures).

I also reject RTI's contention that the "overwhelming majority" of Tufano's attorneys' fees in this case were unnecessary because he could have chosen to accept retroactive COBRA coverage in January 2003 and thereby avoided the need to seek any recovery by means of a lawsuit. *See* Opp. at 2. The crux of this argument is not that some of the time that Tufano's counsel spent on specific litigation tasks was unnecessary and therefore excessive, but rather that the entire litigation was unnecessary and that the law therefore forbids reimbursement. *See id*. at 4. RTI cites no authority for its theory, and I reject it. The ability of a private person or entity to vindicate its perceived lawful rights through civil litigation is fundamental to our system of government – and both parties took advantage of it in this case. Tufano may have made a poor choice before this lawsuit began, but the litigation that followed was "necessary" to see it to a just resolution on the merits.

Moreover, under RTI's theory of necessity, I might just as well find that virtually all of Tufano's legal expenditures were necessary: Once Tufano filed his complaint, RTI could have chosen to pursue a different course, either by asserting an affirmative defense based on Tufano's failure to mitigate, or by offering to settle the case immediately for the amount of Tufano's medical bills. Either choice would have prevented the parties from reaching their current position, in which Tufano's attorneys performed an amount of work they value at over $40,000 to secure a judgment worth less than a quarter of that amount. In that sense, everything that Tufano's counsel did in this case, save for filing the complaint itself, was made "necessary" by RTI's unreasonable litigation choices.

Ultimately, as illustrated above, such a view of what is necessary is self-defeating. It merely begs the question of the reasonableness of the parties' respective position, which is merely

13

one of several factors to be considered in determining *whether* to order the reimbursement of fees, not how much the award should be. Having already made the determination to award some level of fees, assessing the relative reasonableness of the parties' respective legal positions does nothing to advance the relevant inquiry as to amount.

That does not mean that I should, or will, simply accept Tufano's billing records at face value. To the contrary, before awarding fees I must be satisfied that the amount of time claimed represents a claim for time spent on reimbursable work that was "reasonable and necessary." *Morin*, 2005 WL 3470371, slip op. at *2. In that respect, I find the billing records Tufano has submitted to be wanting in several respects.

First, as noted above, Tufano has plainly included in his request the fees he incurred in another matter, including fees for several tasks that his attorneys performed even before he had the surgery that generated the bills at the heart of this lawsuit. On that basis, I exclude the application for reimbursement of fees for a total of 16 hours and 15 minutes by several different attorneys, including all of the work billed by attorney Frank Brennan.[3]

Second, there are several entries that describe time that Zabell spent updating Tufano on the status of his case *after* the bench trial had concluded. Such updates may have been of intense interest to Tufano, but I cannot conclude that they were necessary to the successful prosecution of his case, and I therefore decline to order RTI to subsidize them. On that basis I exclude as unnecessary one hour of attorney Saul Zabell's time ascribed to such updates.

---

[3] Specifically, in addition to Brennan's bills, I exclude 4.5 hours billed by attorney Saul Zabell for work performed on January 13, 2003; the same amount of time billed by the same attorney for work on June 2, 2003; 1.5 hours billed by attorney Neil Frank for work on July 5, 2002; and 15 minutes of work billed by attorney Christopher K. Collotta on July 11, 2002.

Third, it appears that there was significant and unnecessary duplication of effort by Tufano's counsel. Over the course of three years, Tufano was billed for the work of eight different attorneys and one intern, all for a very simple case involving one narrow factual dispute that was tried – by one attorney – in a matter of hours before a judge without a jury. *See Morin*, 2005 WL 3470371, slip op., at *3 (noting that duplication of effort was likely present where five attorneys and one paralegal worked on a single case). A review of the record reveals quite a lot of time ascribed to one attorney providing information to another, either in a conference or by means of a memorandum, as the case progressed to trial. I need not conduct a second major litigation to parse those records for the precise amount of unwarranted duplication of effort; I am instead permitted to estimate an amount by which to reduce the total number of hours claimed to guard against making RTI pay for such redundancy. *See id.* (reducing total attorneys' fees by 25 percent); *see also LaBarbera,* 396 F. Supp.2d at 353 (reducing hours billed by 50 percent); *DeVito v. Hempstead China Shop, Inc.*, 831 F.Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing total attorneys' fees by 40 percent). In the exercise of my discretion after a close review of Tufano's billing records, I conclude that the hours not otherwise excluded should be reduced by 25 percent in Mr. Zabell's case, and 40 percent as to all other attorneys and staff, to ensure that RTI is not forced to pay for the inefficiencies of its adversary's representation.

        c.    <u>The Award</u>

Based on the foregoing analysis, I award Tufano a total of $18,948.00 as reimbursement of the reasonable attorneys' fees he incurred in this litigation, as set forth in the following table:

15

|  | Request | | | Award | | |
| --- | --- | --- | --- | --- | --- | --- |
| **Attorney** | Hourly Rate | Hours | Total Fee | Hourly Rate | Hours | Total Fee |
| Saul Zabell (partner) (for merits litigation) | $300 | 60.60 | $18,180.00 | $250 | 37.95 | $9,487.50 |
| Saul Zabell (partner) (for fee application) | $350 | 10.00 | $3,500.00 | $250 | 7.50 | $1,875.00 |
| Neil Frank (partner) | $300 | 3.50 | $1,050.00 | $250 | 1.20 | $300.00 |
| Jeffrey D. Fields (of counsel) | $300 | 5.25 | $1,575.00 | $250 | 3.15 | $787.50 |
| Christopher K. Collotta (associate) | $250 | 55.60 | $13,900.00 | $150 | 33.21 | $4,981.50 |
| Jennifer Siegal-MacNamara (associate) | $250 | 3.50 | $875.00 | $150 | 2.10 | $315.00 |
| Frank Brennan (associate) | $200 | 5.50 | $1,100.00 | $150 | 0.00 | $0.00 |
| Cory Skolnick (associate) | $200 | 4.50 | $900.00 | $150 | 2.70 | $405.00 |
| Randi Rosenstein (associate) | $200 | 5.75 | $1,150.00 | $150 | 3.45 | $517.50 |
| Keith Print (intern) | $75 | 7.75 | $581.25 | $60 | 4.65 | $279.00 |
| **TOTAL** | **$264 (avg.)** | **161.95** | **$42,811.25** | **$198 (avg.)** | **95.91** | **$18,948.00** |

B. <u>Costs</u>

Tufano has also submitted an itemized list of his litigation costs, which include filing fees, photocopying, and postage expenses totaling $244.46. Memo. Ex. C. Such costs are reimbursable as long as they are "incidental and necessary to the representation." *Securities and Exch. Comm'n v. Goren*, 272 F. Supp.2d 202, 214 (E.D.N.Y. 2003). The $150 that Tufano spent

on the mandatory filing fee charged in this district at the time he commenced this case was unquestionably incidental and necessary to the instant litigation. With respect to the remaining expenses totaling $94.46, however, I can have no comparable certainty. Some, incurred before the Complaint was filed, are plainly attributable to something other than this litigation; others, described merely as "expenses" without further elaboration are too vague to merit relief; and others still, described in the records with the words "no charge," appear not to have been billed to Tufano, who therefore requires no reimbursement for them. Accordingly, I order RTI to reimburse Tufano only for $150.00 in litigation costs other than reasonable attorneys' fees.

    C.    <u>Interest</u>

Tufano requests both pre- and post-judgment interest on the compensatory damages awarded. *See* Memo. at 10. I address each in turn.

    1.    <u>Pre-Judgment Interest</u>

In the exercise of my discretion I may, but need not, award pre-judgment interest to Tufano on the basis of RTI's violation of his federally protected right. *See Gilbert v. Hotline Delivery,* 2001 WL 799576, *3-4 (S.D.N.Y. July 10, 2001); *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998). My exercise of such discretion is guided by "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Robinson v. Instructional Systems, Inc.*, 80 F. Supp.2d 203, 206 (S.D.N.Y. 2000) (quoting *Wickham Contracting Co. v. Local Union No. 3,* 955 F.2d 831, 833-34 (2d Cir. 1992) (citing *Loeffler v. Frank*, 486 U.S. 549, 557-58 (1988))). "Discretionary awards of prejudgment interest are proper, when the awards are fair, equitable and

necessary to compensate the wronged party fully." *Id*. (quoting *Wickham Contracting Co.*, 955 F.2d 835) (internal quotations omitted).

Considering all of the factors cited above, I conclude that it would be unjust to award pre-judgment interest to Tufano. Although other factors might influence my determination in this regard, I find it dispositive that Tufano has never been out of pocket for the amount of his medical bills; instead, he incurred a debt that he has never paid, and the parties stipulated to the amount of damages that would suffice to satisfy that debt. *See* Tr. at 4-5, 41, 56. Accordingly, no award of pre-judgment interest is needed "to fully compensate the wronged party for actual damages suffered," the "relative equities" counsel against any such award, and no such award is "necessary" either "to compensate the wronged party" or to vindicate "the remedial purpose of the statute involved[.]" *Robinson*, 80 F. Supp.2d at 206. I would award pre-judgment interest if by doing so I would ensure that Tufano is restored to the position he would have occupied but for RTI's ERISA violation, but the record unequivocally demonstrates that an award in this case would instead be nothing more than a windfall. I therefore deny Tufano's request for pre-judgment interest.

### 2. Post-Judgment Interest

As a plaintiff who prevailed on a federal claim, Tufano is entitled to interest on his entire damage award "from the time damages are reduced to an enforceable judgment to the time the defendant pays the judgment." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 55 (2d Cir. 1998) (quoting *Andrulonis v. United States*, 26 F.3d 1224, 1230 (2d Cir. 1994)); *see* 28 U.S.C.§ 1961. Tufano is therefore entitled to post-judgment interest beginning on the date the Clerk enters

judgment – which as far as I can discern from the docket has not yet occurred, but which I will direct the Clerk to do promptly upon the issuance of this order.

The interest rate "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C.§ 1961(a) (footnote omitted). That rate is 5.10 percent per year. *See* http://www.federalreserve.gov/releases/H15/data/Weekly_Friday_/H15_TCMNOM_Y1.txt (visited on August 23, 2006).

III. Conclusion

For the reasons set forth above, I award plaintiff Robert Tufano a total of $19,098.00, including $18,948.00 in reasonable attorneys' fees and $150.00 in other litigation costs. I further deny Tufano's motion for an award of pre-judgment interest but award him post-judgement interest on the damages award of $10,232.90 at an annual rate of 5.10 percent to be calculated from the date of judgment. I respectfully direct the Clerk to enter judgment accordingly.

**SO ORDERED.**

Dated: Brooklyn, New York
       August 23, 2006

                                             /s/ James Orenstein
                                             JAMES ORENSTEIN
                                             U.S. Magistrate Judge